# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | |
|---|---|
| MONICA M. RIDER, | Case No. 3:21-cv-00077 |
| Plaintiff, | District Judge Walter H. Rice |
| vs. | Magistrate Judge Sharon L. Ovington |
| AMERIT FLEET SOLUTIONS, INC., *et al.*, | |
| Defendants. | |

## REPORT AND RECOMMENDATIONS[1]

### I. INTRODUCTION

Plaintiff Monica M. Rider, former employee of Defendant Amerit Fleet Solutions, Inc. ("AFS"), brings this case *pro se* asserting claims for wrongful termination, violation of state labor laws and fiduciary duty, racial and gender-based discrimination, and violation of civil rights and privacy. This matter is before the Court on Defendant AFS's Renewed Motion to Compel Arbitration and Stay Court Action or, in the Alternative, to Dismiss (Doc. No. 14), Plaintiff's Motion for Order to Show Cause for Contempt (Doc. No. 17), and Plaintiff's Motion for Leave of Court to Retract Statement (Doc. No. 21).

### II. BACKGROUND

During her employment, Plaintiff signed a Mutual Agreement to Arbitrate Claims ("Arbitration Agreement"). (Doc. No. 23-1, PageID 179-80). However, she avers that she

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

"did not realize" that she signed such an agreement until after her employment was terminated. (Doc. No. 2, PageID 24). Upon realizing the Arbitration Agreement, Plaintiff attempted to contact Defendant AFS about arbitration. (Doc. No. 16, PageID 94). Her initial attempts were unsuccessful, so she emailed HR on November 19, 2020:

> I have called Amerit Fleet Solution 4 times and know [*sic*] one has called me back yet. My name is Monica Rider. I was terminated 04/11/2019 in Springfield Ohio. I have been looking for an attorney to take my case and I was told that I signed an arbitration form and that I can not [*sic*] sue in court but have to have an arbitration hearing. So I have been calling to set up an arbitration. I was wrongfully terminated and discriminated against and harassed and had my privacy invaded. I would like an arbitration hearing. You can reach me at [xxx]-[xxx]-[xxxx]. I did not know that I signed an arbitration agreement and that was not explained [*sic*] me.

(Doc. No. 16-1, PageID 101). That same day, she learned her email was "escalated to the management team." *Id.* at 102. On January 12, 2021, Plaintiff followed-up by email indicating that she had "not heard from anyone yet," and would petition the court if she did not receive a response within ten business days. *Id.* at 103. She received a response later that same day, which indicated that a "Senior Human Business Partner" from Defendant AFS had "tried contacting [her] twice in the past and [Plaintiff had] not returned her call." *Id.* Plaintiff replied that she did not have any voice messages. *Id.* at 104.

Plaintiff subsequently filed her *pro se* complaint in this Court on March 23, 2021 alleging claims against Defendant AFS and Individual Defendants, Jim Kleon, Monica McKinney, and Eric Williams, current and former employees of AFS. (Doc. No. 2, PageID23). Upon receipt of her complaint, counsel contacted Plaintiff about whether she would stipulate to arbitration. (Doc. No. 19-1, PageID 138). Plaintiff declined. *Id.* As a

2

result, Defendant AFS now seeks an order compelling Plaintiff to arbitrate her claims and staying this case or, in the alternative, dismissing the action. (Doc. No. 14, PageID 79).

### III. DISCUSSION

Defendant AFS asks this Court for an order compelling arbitration because (1) the Arbitration Agreement is valid and enforceable and (2) Plaintiff's claims in the present case fall within the scope of the Arbitration Agreement. (Doc. No. 14, PageID 85-87). Plaintiff does not challenge the validity or scope of the Arbitration Agreement. Instead, she asserts that the failure to respond to her communications about arbitration demonstrates that Defendant AFS has waived its right to arbitration. (Doc. No. 16, PageID 96).

Under the Federal Arbitration Act ("FAA"), "[a] written agreement to arbitrate disputes arising out of a transaction in interstate commerce 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Javitch v. First Union Securities, Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (quoting in part 9 U.S.C. § 2). It is well-established that the FAA "[m]anifest[s] a 'liberal federal policy favoring arbitration agreements ….'" *Id.* (quoting, in part, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 625, 105 S. Ct. 3346 (1985)). "The FAA was designed to override judicial reluctance to enforce arbitration agreements, to relieve court congestion, and to provide parties with a speedier and less costly alternative to litigation." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

"[T]he FAA 'is at bottom a policy guaranteeing the enforcement of private contractual arrangements.'" *Id.*; *see Cooper v. MRM Investment Co.,* 367 F.3d 493, 498 (6th Cir. 2004). "Courts … examine the language of the contract in light of the strong

3

federal policy in favor of arbitration. Likewise, any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." *Stout,* 228 F.3d at 714 (citations omitted). Yet, "[b]efore compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch*, 315 F.3d at 624.

The record reflects that a valid agreement to arbitrate exists. Ohio law dictates that "[a] provision in any written contract…to settle by arbitration a controversy that subsequently arises out of the contract…shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract." *Thibault v. Heartland Recreational Vehicles LLC, et al.*, No. 2:18-cv-732, 2019 WL 1274729, at *3 (S.D. Ohio March 19, 2019) (Smith, D.J.) (quoting O.R.C. § 2711.01(A)). There are limited exceptions, such as unconscionability, but none are asserted here. Plaintiff signed the Arbitration Agreement during the course of her employment. While she contends that she did not realize that she signed the agreement, she does not challenge its validity.[2]

Plaintiff's claims also fall squarely within the broad scope of the Arbitration Agreement, which states, in relevant part, that "the Company and Employee hereby mutually agree that any claims arising out of or relating to [her] employment at the Company or the termination of that employment…shall be resolved through binding

---

[2] In a separate motion, Plaintiff asks the Court for permission to retract statements, including her statement that she signed "an arbitration agreement at the time of employment." (Doc. No. 21, PageID 156). She indicates that her statement should have stated that she "unintentionally and was unaware that she signed an arbitration [*sic*] at the time of employment." *Id.* Plaintiff's Motion for Leave of Court to Retract Statement (Doc. No. 21) should be denied as moot because, regardless of her awareness, there is no dispute that Plaintiff did in fact sign the Arbitration Agreement.

arbitration pursuant to the Federal Arbitration Act…" (Doc. No. 23-1, PageID 179).  In fact, the Arbitration Agreement names certain claims that must be resolved through binding arbitration, such as claims for harassment and/or discrimination, wrongful termination, and invasion of privacy, which are claims set forth in Plaintiff's *pro se* complaint.  *Id.*  The same is true for her claims as they pertain to Individual Defendants Kleon, McKinney and Williams because the agreement further provides that claims against "…employees and agents must also be resolved through binding arbitration if they arise out of or relate to [her] employment at the Company or the termination of that employment." *Id*.

In furtherance of their respective positions, each party relies on the other party's alleged failure, neglect, or refusal to arbitrate under 9 U.S.C. § 4.  (Doc. No. 14, PageID 84-85) (Doc. No. 16, PageID 95-96).  Plaintiff's reliance, however, is mistaken because this provides a mechanism to enforce arbitration, rather than avoid it.  *See* 9 U.S.C. § 4 ("A party aggrieved by the failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court…for an order directing that such arbitration proceed in the manner provided for in such agreement.").

Turning to the primary issue of waiver, "a party may waive an agreement to arbitrate by engaging in two courses of conduct: (1) taking actions that are completely inconsistent with any reliance on an arbitration agreement; and (2) delaying its assertion to such an extent that the opposing party incurs actual prejudice." *Hurley v. Deutsche Bank Trust Co. Ams.*, 610 F.3d 334, 338 (6th Cir. 2010) (citing *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 356 (6th Cir. 2003) (citations omitted) (internal quotations omitted).  Yet,

5

given the strong presumption in favor of arbitration, "we will not lightly infer a party's waiver of its right to arbitration." *Id.* (citing *O.J. Distrib.*, 340 F.3d at 355).

Plaintiff contends that Defendant AFS's failure to respond to her communications is "completely inconsistent" with reliance on the Arbitration Agreement. However, even accepting her allegations as true, it is difficult to construe Defendant AFS's lack of responsiveness as being inconsistent with its present reliance on the Arbitration Agreement. There is nothing to suggest that Plaintiff took steps towards initiating arbitration aside from attempting to contact Defendant AFS six times over a twenty-four month period—first by phone, then by email. This alone is not enough to infer that Defendant AFS's actions, or lack thereof, were at odds with its present desire to arbitrate. Within weeks of receiving the complaint, Defendant AFS sought to compel arbitration.

Defendant AFS has also not delayed its assertion of its contractual right to arbitrate to such an extent that Plaintiff has incurred actual prejudice. Actual prejudice "tends to arise only after the wheels of justice have begun to turn," and for example, "result[s] from a party spending substantial time or money litigating a case before an arbitration right is invoked." *Borror Prop. Mgmt., LLC v. Oro Karric North, LLC*, 979 F.3d 491 (6th Cir. 2020); *see, e.g., Gen. Star Nat'l Ins. Co. v. Administratia Asigurarilor De Stat*, 289 F.3d 434, 438 (6th Cir. 2002) (finding that a party waived its right to arbitrate by failing to assert its right until 17 months after it received actual notice of the complaint); *Hurley*, 610 F.3d at 340 (holding that the parties waived their right to arbitrate where the opposing party incurred costs of active litigation in two federal courts, which included the employ of four attorneys, extensive discovery, several dispositive motions, and change of venue).

Such facts are not present here. Plaintiff filed her *pro se* complaint on March 23, 2021. (Doc. No. 2). Upon receipt of her complaint, counsel for Defendant AFS contacted Plaintiff about whether she was amenable to arbitration. (Doc. No. 19). She was not. Defendant AFS subsequently filed its initial Motion to Compel Arbitration on April 16, 2021. (Doc. No. 5). There is no reason to believe that this brief intervening period provided an opportunity for Plaintiff to spend substantial time or money litigating this case. *See Henry v. Smyth Auto., Inc.*, No. 2:20-cv-3292, 2020 WL 7767626, at *4 (S.D. Ohio Dec. 3, 2020) (Sargus, D.J.) (finding no actual prejudice where the party moved to compel arbitration less than two months after the complaint was filed, no discovery occurred, and no other motions had been filed). Likewise, there is no indication that Plaintiff's actions in the period before she filed her *pro se* complaint deprived her of considerable time or resources. The facts in the present case do not support a finding of actual prejudice.

Plaintiff's remaining assertions are also unavailing. In her response, she describes a series of statements submitted by counsel for Defendant AFS that she finds to be false and misleading. By separate motion, she seeks to hold counsel in contempt for perjury under 18 U.S.C. § 1621 for these allegedly false and misleading statements. (Doc. No. 17, PageID 108). Her contentions are unpersuasive—both as to her response opposing the Motion to Compel as well as her Motion for Order to Show Cause for Contempt.

She maintains that false statements were made about the Arbitration Agreement. She challenges the declaration of Jennifer Stephens, Senior Human Resource Business Partner. (Doc. No. 17-1, PageID 113-14). Ms. Stephens declared that Exhibit A was a "true and correct copy" of the Arbitration Agreement. *Id.* at 113. Plaintiff contends this is

not true because her name and initials are absent from the first page of the Arbitration Agreement, which was attached as Exhibit A. This difference, however, is not material. Plaintiff presents her own copy of the Arbitration Agreement. This copy has her name and initials, but otherwise mirrors Exhibit A. (Doc. No. 23-1, PageID 179). The remainder of Exhibit A accurately reflects the Arbitration Agreement and includes Plaintiff's signature. *Id.* at 180. From these facts, there is no indication that Ms. Stephens acted with intentionality or bad faith in asserting that Exhibit A was a "true and correct copy."

She also asserts that referring to the Arbitration Agreement as a "separate standalone agreement" is false and misleading. She points this Court to other documents in her employment records—such as an I-9 Form—which she believes to be part of the Arbitration Agreement. (Doc. No. 23-1, PageID 171-81). This belief, however, is misguided because these other documents are not related to the Arbitration Agreement.

Plaintiff's own statements undermine the remainder of her assertions. For example, she argues that that counsel "has mislead the court into thinking [*sic*] parties had engaged in conversation to arbitrate and was unable to agree as to any stipulation which is **Not True**." (Doc. No. 23, PageID 166) (emphasis in original). Yet, she specifically recounts a conversation with counsel where counsel "want [*sic*] to know [*sic*] could parties set up arbitration." *Id.* Plaintiff told counsel "no." *Id.* This exchange is not contrary to counsel's declaration. (Doc. No. 17-2, PageID 121). Likewise, she also suggests that counsel misled the Court in stating that "Plaintiff filed her complaint alleging four claims against Amerit Fleet Solution: (1) wrongful termination…" (Doc. No. 23, PageID 165). However, she clearly asserts a claim for wrongful termination in her complaint. (Doc. No. 2, PageID 24).

8

For these reasons, Plaintiff should be compelled to arbitrate her claims and all litigation in this matter should be stayed pending resolution of arbitration.

**IT IS THEREFORE RECOMMENDED THAT**:

1. Defendant Amerit Fleet Solutions Inc.'s Renewed Motion to Compel Arbitration and Stay Court Action or, in the Alternative, to Dismiss (Doc. No. 14) be granted;

2. Plaintiff's Motion for Order to Show Cause for Contempt (Doc. No. 17) be denied;

3. Plaintiff's Motion for Leave of Court to Retract Statement (Doc. No. 21) be denied as moot; and

4. This matter be stayed pending resolution of arbitration.

January 3, 2022
*s/Sharon L. Ovington*
Sharon L. Ovington
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).